```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF SOUTH CAROLINA
         ANDERSON/GREENWOOD DIVISION
```

| | |
|---|---|
| Kevin Andreal Light, | Case No. 8:11-cv-01578-TLW-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Captain Sharon Middleton; Lt. Luke Lark, | |
| Defendants. | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 45.] Plaintiff, proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on June 24, 2011,[1] alleging conditions of confinement claims and an equal protection claim. [Doc. 1.] Defendants filed a motion for summary judgment on April 26, 2012. [Doc. 45.] On April 27, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to Defendants' motion. [Doc. 46.] Plaintiff filed a response in opposition to Defendants'

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on June 24, 2011. [Doc. 1-1 (envelope postmarked June 24, 2011).]

motion for summary judgment on July 3, 2012. [Doc. 53.] Defendants filed a reply on July 9, 2012. [Doc. 55.] Accordingly, Defendants' motion is now ripe for review.

## BACKGROUND

At all times relevant to this action, Plaintiff was a pre-trial detainee at Greenwood County Detention Center ("GCDC"). [*See* Doc. 1.] Plaintiff alleges he is allergic to the soap issued to GCDC inmates and that a doctor told him to use a different soap and a skin lubricant for his overly dry skin. [*Id.* at 3.] Plaintiff alleges Defendant Captain Sharon Middleton ("Middleton") told Plaintiff that GCDC could not provide him different soap, he was not allowed to have baby oil, and his family would have to bring him different soap and lotion if he could not afford to buy these items from the GCDC canteen.[2] [*Id.* at 3–4.] Further, Plaintiff alleges he told Defendant Lt. Luke Lark ("Lark") he needed toilet paper and Lark said he would get some, but Lark never brought Plaintiff any toilet paper and Plaintiff had to use legal pad paper. [*Id.* at 4.] Plaintiff also alleges he has been treated unequally [*id.*], specifically alleging (1) he requested to use the telephone but was not allowed to use it until two weeks later, although others were allowed to use the telephone on the same day of their request [*id.* at 5] and (2) on June 17, 2011, he received a tray without meat but all the other inmates received meat [*id.* at 6]. Additionally, Plaintiff alleges he has been charged for things he should receive for free, such as soap, toothpaste, shampoo, and deodorant. [*Id.* at 5.] Plaintiff seeks to be allowed to have baby oil for his skin irritation problem; to be treated equally with other GCDC inmates; an apology from

---

[2] Plaintiff alleges his grandmother brought him two bars of soap and baby oil, but Middleton would not allow him to have the baby oil and it was placed in his personal property. [Doc. 1 at 4.] Plaintiff does not allege that he was not allowed to have the soap.

2

Middleton for lying to Plaintiff;[3] $100,000 for Middleton depriving Plaintiff of his rights; an apology from Lark for lying to Plaintiff; and $100,000 for Lark depriving Plaintiff of his rights. [*Id.* at 7.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

[3] Plaintiff alleges that, in front of the doctor, Middleton told Plaintiff he could have baby oil, but Middleton later told Plaintiff he could not have baby oil. [Doc. 1 at 3–4.]

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

5

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Conditions of Confinement Claims**

Plaintiff complains about the conditions of his confinement at GCDC, alleging he was denied baby oil and toilet paper and was charged for personal hygiene items he should have received for free. [Doc. 1 at 3–5.] Defendants contend Plaintiff has failed to demonstrate any actions or inactions on the part of Defendants that violated Plaintiff's constitutional rights. [Doc. 45-1 at 3–5.] The Court agrees Plaintiff has failed to establish a violation of his constitutional rights with respect to the conditions of his confinement.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).[4] Unlike convicted inmates, pretrial

---

[4] In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner . . . ." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To determine whether prison officials have violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S.

7

detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Bell*, 441 U.S. at 539. However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 539–40.

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. *See, e.g.*, *id.* at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and

---

1, 5 (1992)).

services of a good hotel."). Further, Plaintiff has failed to allege any injury resulting from the conditions of which he complains and has failed to set forth any facts or evidence to establish that the conditions of confinement resulted in any violation of his constitutional rights. Therefore, Plaintiff's allegations about the conditions at GCDC are insufficient to raise a genuine issue of fact as to whether any of his constitutional rights were violated. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently).

Moreover, Defendants' actions and/or inactions in denying Plaintiff baby oil and toilet paper were based on prison policy. [Doc. 45-2 ¶ 3 (averring baby oil is prohibited per GCDC policy); Doc. 45-3 ¶¶ 2–5 (explaining how toilet paper is distributed and replenished at GCDC).[5]] A prison regulation infringing a prisoner's constitutional rights is valid if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Turner*, the United States Supreme Court articulated a four-part test to determine whether a prison regulation is reasonable,[6] but as Plaintiff does not challenge

---

[5] In his response in opposition, Plaintiff contends Lark lied in his affidavit to the extent Lark avers inmates know about the toilet tissue policy and that inmates are allowed to receive toilet tissue even if they are not completely out of toilet tissue. [Doc. 53 at 1–3.] However, Plaintiff offers only his bare allegations to support his assertions—unlike Defendants, Plaintiff has failed to produce affidavits or other evidence to support his assertions. Therefore, while the Court has considered Plaintiff's arguments, the Court concludes Plaintiff has failed to meet his burden of demonstrating a genuine issue of material fact to withstand Defendants' motion for summary judgment.

[6] The four factors are (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Turner*, 482

the validity of GCDC's regulations or allege any injury as a result of the regulations, the Court has no basis for finding the regulations unreasonable. Consequently, Defendants' motion for summary judgment should be granted as to Plaintiff's conditions of confinement claims.[7]

---

U.S. at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

[7] To the extent Plaintiff's claim relating to the denial of baby oil is properly construed as a claim of deliberate indifference to his medical needs, the Court concludes Plaintiff has also failed to establish a claim of deliberate indifference. Deliberate indifference to a prisoner's serious medical needs states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on a deliberate indifference claim, the inmate must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing *deliberate* indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson*, 501 U.S. at 297 (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, even assuming Plaintiff's dry skin was a sufficiently serious medical condition, the record does not support finding Defendants were deliberately indifferent to Plaintiff's condition. Plaintiff acknowledges Middleton told Plaintiff that, based on GCDC policy, he was not allowed to have baby oil [Doc. 53 at 3], and Plaintiff does not dispute that he was allowed to have lotion to treat his dry skin [*see* Docs. 1, 53; *see also*

**Equal Protection Claim**

Plaintiff also contends he was treated unequally, specifically alleging (1) he requested to use the telephone but was not allowed to use it until two weeks later, although others were allowed to use the telephone on the same day of their request and (2) he once received a tray without meat when all the other inmates received meat.[8] [Doc. 1 at 4–6.] Defendants argue Plaintiff has failed to demonstrate Defendants treated him differently from similarly situated inmates or that any unequal treatment was the result of intentional or purposeful discrimination. [Doc. 45-1 at 5–6.] The Court agrees Plaintiff has failed to establish a violation of his right to equal protection of the laws.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. In the Fourth Circuit, a prisoner must demonstrate two elements to establish an equal protection claim:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

---

Doc. 45-2 ¶¶ 5–6 (averring that, upon information and belief, Plaintiff's family brought him lotion, which he was allowed to have).] Further, as previously stated, Plaintiff does not allege that he was not allowed to have the soap his family brought him to use in place of the soap issued by GCDC. Therefore, Plaintiff appears to contend he did not receive the treatment of his choice, which is not a cognizable constitutional claim. *See, e.g.*, *Jackson*, 846 F.2d at 817. Thus, to the extent Plaintiff alleges a claim of deliberate indifference to his medical need, such claim should be dismissed.

[8] In his response in opposition, Plaintiff also contends that on March 14, 2012, each cell in his housing unit was searched, and every inmate whose property was searched was allowed to keep his property, except for Plaintiff. [Doc. 53 at 4.]

*Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The requisite level of scrutiny is the rational basis test rather than strict scrutiny, even if the disparate treatment implicates the prisoner's fundamental rights. *Id.* at 654–55 (quoting *Turner*, 482 U.S. at 89). Therefore, to be valid, the disparate treatment must be reasonable in light of the security and management concerns of the prison system. *Id.* at 655.

Here, there is no evidence in the record, other than Plaintiff's conclusory allegations, that similarly situated inmates were treated differently from Plaintiff. To survive a motion for summary judgment, the non-moving party may not rest on the allegations averred in his pleadings but must demonstrate specific, material facts exist that give rise to a genuine issue. *Celotex*, 477 U.S. at 324; *see also House v. New Castle Cnty.*, 824 F. Supp. 477, 485 (D. Del. 1993) (holding that a plaintiff's conclusory allegations are insufficient to maintain a claim, especially when the plaintiff fails to counter contradictory evidence in the record). Consequently, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact to survive Defendants' motion for summary judgment and recommends Defendants' motion be granted as to Plaintiff's equal protection claim.[9]

---

[9] The Court also notes that, as to the specific issue of telephone use, inmates have no constitutional or federal statutory right to the use of a telephone while in prison. *U.S. v. Alkire*, 82 F.3d 411 (4th Cir. 1996) (unpublished table decision). Thus, to the extent Plaintiff states a claim based solely on the deprivation of access to a telephone, Plaintiff has failed to state a cognizable claim for relief.

Further, a prisoner's claim for deprivation of personal property is not cognizable under § 1983. *Parratt v. Taylor*, 451 U.S. 527, 544 (1981) (holding that a prisoner was "deprived" of his property within the meaning of the due process clause of the Fourteenth Amendment but that the state's tort remedy provided all the process that was due); *see also Drake v. Jones*, No. 08-0156, 2008 WL 2051744 at *3, (W.D. La. March 31, 2008) (holding that if state law remedies are available, no further due process required for prisoner's claims that true balance of account was not transferred when he was transferred to another prison). Here, to the extent he states a claim based solely on the deprivation of his property, Plaintiff could have instituted a civil action in the state courts to recover his personal property under S.C. Code § 15-69-10 et seq., and therefore, Plaintiff has failed to state a cognizable claim for relief under § 1983.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 27, 2012
Greenville, South Carolina